**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **ALWAYS AT MARKET, INC.** | § | |
| | § | |
| *Plaintiff* | § | **CIVIL ACTION NO. 3-06 CV 2145-L** |
| | § | |
| **V.** | § | **Removed from the District Court of** |
| | § | **Dallas County, Texas, 191st Judicial** |
| | § | **District, Cause No. 06-10770** |
| **RONALD GIRARDI and** | § | |
| **CONTEMPO GROUP, INC.** | § | **DESIGNATED ECF CASE** |
| | § | |
| *Defendants* | | |

**PLAINTIFF'S PROPOSED FINDINGS AND CONCLUSIONS**

Plaintiff Always at Market, Inc. ("AAM") submits the following proposed Findings of Fact and Conclusions of Law:

**I. AAM's Claims**

AAM has stated claims against Defendants, or either of them, for breach of contract, breach of fiduciary duty, misappropriation and theft of funds, misappropriation of trade secrets, tortuous interference, unfair competition, and aiding and abetting. The remedies sought by AAM are for actual damages in excess of seventy five thousand dollars, punitive damages, attorney fees, and costs. AAM also seeks an accounting of Girardi's and CGI's income and profits.

**Proposed Findings re AAM's Claims:**

Plaintiff Always at Market, Inc. ("AAM") is, and at all material times has been, a corporation duly formed and existing under the laws of the State of Delaware, with its principal place of business at 1545 Capital Drive, Suite 100, Carrollton, Dallas County, Texas 75006.

Defendant Ron Girardi ("Girardi") is, and at all material times has been, a citizen of the State of New York, residingn at 405 Plover Court, New Windsor, New York 12553.

Defendant Contempo Group Inc. ("CGI") is, and at all material times has been, a corporation duly formed and existing under the laws of the State of New York, with its principal place of business at Suite 1, Storm King Station, Route 9W, Cornwall, New York  12518.

This lawsuit originally was filed in state district court by AAM against Girardi, and was timely removed to federal court by Girardi.  CGI subsequently was added to the lawsuit by AAM.  Both Girardi and CGI have answered AAM's claims, and Girardi has filed counterclaims against AAM.

The amount in controversy, as pleaded by Plaintiff, exceeds seventy five thousand dollars, exclusive of interest and costs.

AAM is, and at all material times has been, a direct and secondary distributor of merchandise, including watches, via internet sales, by acquiring merchandise at discounted prices from suppliers ("sourcing") and then either selling the merchandise directly to the end-user customer or supplying the merchandise to another internet distributor for ultimate sale to the end-user customer ("Watch Business").

The success and profitability of AAM's Watch Business is dependent, in material part, on AAM's ability to source merchandise at the lowest possible cost to AAM and then sell or distribute the merchandise for the highest possible price. The information and methodology to do this includes, without limitation, confidential knowledge of Plaintiff's suppliers, customers, pricing and cost controls, and knowledge of which items can be successfully marketed ("Proprietary Information"). This Proprietary Information is confidential, unique and valuable, and gives Plaintiff a competitive advantage over its business competitors.

Beginning in December 2002, Girardi was employed full-time by AAM to help develop and advance AAM's Watch Business, including the sourcing, pricing, and sale or distribution of watches.

In his capacity as an employee of AAM, Girardi had access to and regularly utilized AAM's Proprietary Information, including its customer lists, vendor lists, product lists, sales techniques and strategies, and related proprietary business methodologies.

Girardi, while employed by AAM, began actively competing with AAM. In this regard, and without limitation, Girardi engaged in the following acts while employed by AAM ("Competitive Acts"):

PLAINTIFF'S PROPOSED FINDINGS AND CONCLUSIONS  - page 2

(i)  Girardi, in the Fall of 2004, and with a business partner, caused CGI to be formed for the purpose of engaging in the same or similar Watch Business as AAM and as a competitor of AAM.

(ii)  From inception, Girardi was a 50% owner of CGI, the other 50% being owned by his business partner, Ed Goldberg.

(iii)  From inception, Girardi was president of CGI, or otherwise performed the duties and functions of a chief executive or operating officer.

(iv)  Girardi, directly or indirectly through his business partner Goldberg, actively took steps to develop CGI's watch business in furtherance of the business interests of CGI and in competition or planned competition with AAM's Watch Business.

(v)  Girardi and CGI misappropriated AAM's Proprietary Information for the purpose of growing CGI's business and enabling it to compete  with AAM.

(vi)  Girardi, directly and through his business partner at CGI, misappropriated funds from AAM via "kickbacks" from one or more vendors, and utilized the funds for the purpose of growing CGI's business and enabling it to compete with AAM.

(vii)  Girardi, directly and through his business partner at CGI, interfered with AAM's business relations with its vendors and customers.

Girardi did not disclose his Competitive Acts to AAM while he was still employed by AAM, and took active steps to conceal them from AAM.

Girardi, for his benefit and that of CGI, utilized and disclosed AAM's Proprietary Information in furtherance of his Competitive Acts, and after termination of his employment with AAM continued to utilize and disclose AAM's Proprietary Information in furtherance of his Competitive Acts and as a natural progression thereof.

Girardi's Competitive Acts materially benefited Girardi and CGI, and were materially detrimental to AAM.

CGI knowingly and materially aided and abetted Girardi's Competitive Acts.

AAM has been damaged by Girardi's Competitive Acts, or  Girardi and CGI have been benefited by Girardi's Competive Acts, in the amount of $_____.

Girarid, while employed by AAM, and acting directly or indirectly through his business partner Goldberg, solicited or accepted undisclosed payments of money from AAM vendors ("Kickbacks") in consideration for steering business to those vendors.

The Kickbacks were utilized, in part, to fund Girardi's Competitive Acts with AAM, and s increased the price paid by AAM to those vendors.

Girardi and CGI received Kickbacks in an amount in excess of $_____.

The amount of Girardi's and CGI's wrongful gains cannot be determined without a court-ordered accounting.

PLAINTIFF'S PROPOSED FINDINGS AND CONCLUSIONS  - page 3

**Proposed Conclusions re AAM's Claims:**

The Court has jurisdiction over the subject matter, claims, and parties in this lawsuit.

> *28 U.S.C. §1332(a); 28 U.S.C. §1441 et seq. and FRCP 81(c).*

Girardi is liable to AAM for breaching his fiduciary and other duties arising out of his employment relationship with AAM, including without limitation the following duties:

> i. To act only for the benefit of his employer in all matters undertaken by Girardi in connection with the employment relationship, and do no act that would tend to injure his employer's business or reputation.

> ii. To deal openly with his employer and fully disclose information regarding matters affecting the employer's business.

> iii. To not steal from his employer, and to account to his employer for any money or things of value received in the performance of his employment services.

> iv. To not compete with his employer during the existence of the employment relationship.

> v. To not utilize or disclose the employer's confidential or proprietary information made known to the employee during the employment relationship, either during the employment relationship or thereafter.

> vi. To act only as authorized, and to follow the employer's reasonable known instructions and workplace rules.

> *Navigant Consulting, Inc. v. Wilkinson, 508 F.3d 277 (5th Cir. 2007); Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193 (Tex. 2002); ReStatement (Third) Agency §8.04.*

Girardi is liable to AAM for both common-law and statutory misappropriation of trade secrets and property from AAM.

> *Navigant Consulting, supra; Alcatel USA, Inc. v. DGI Technologies, 166 F.3d 772 (5th Cir. 1999); Hyde Corp. v. Huffines, 314 S.W.2d 763 (Tex. 1958); Texas Theft Liability Act, Tex. Civ. Prac. & Remedies Code §§134.001 et seq.*

Girardi is liable to AAM for knowingly interfering with AAM's business relations with vendors and customers.

> *Wal-Mart Stores v. Sturges, 52 S.W.3d 711 (Tex. 2001); Bradford v. Vento, 48 S.W.3d 749 (Tex. 2001).*

Girardi is liable to AAM for knowingly engaging in unfair competition with AAM.

> *Seatrax, Inc. v. Sonbeck Int'l, Inc., 200 F.3d 358 (5th Cir. 2000).*

CGI is liable to AAM for aiding and abetting Girardi's breach of his duties to AAM.

> *Grandstaff v. City of Borger, 767 F.2d 161 (5th Cir. 1985); Juhl v. Airington, 936 S.W.2d 640 (Tex. 1996); Kinzbach Tool Co. v. Corbett-Wallace Corp., 160 S.W.2d 509 (Tex. 1942).*

Girardi and CGI are liable, jointly and severally, for exemplary damages.

> *Owens-Corning Fiberglass Corp. v. Malone, 972 S.W.2d 35 (Tex. 1998); Transportation Ins. Co. v. Moriel, 879 S.W.2d 10 (Tex. 1994); Tex. Civ. Prac. & Rem. Code §41.001(5).*

AAM is entitled to a court-ordered accounting to determine the extent of damages.

> *Richardson v. First National Life Insurance Co., 419 S.W.2d 836 (Tex. 1967).*

Girardi and CGI are liable, jointly and severally, to AAM for actual damages in the amount of $_____.

Girardi is liable to AAM for punitive damages in the amount of $_____.

CGI is liable to AAM for punitive damages in the amount of $_____.

AAM incurred $_____ in reasonable and necessary attorney fees in pursuit of its contractual claims against Girardi.

Judgment shall be entered for AAM, and against Girardi and CGI jointly and severally, in the total amount of $_____, plus costs.

## II. Girardi's Claims

Defendant Girardi, as Counterclaimant, has stated breach of contract claims against AAM for wages, bonus, and expenses allegedly owed to Girardi in connection with his employment by AAM. AAM has asserted the defenses of payment, statute of frauds, failure of conditions precedent, lack or failure of consideration, prior breach, waiver, estoppel, offset, and administrative res judicata.

**Findings re Girardi's Claims:**

Girardi was employed by AAM as an "employee at will".

Girardi's only promised compensation was an annual wage, paid monthly or semi-monthly.

AAM paid to Girardi all wages owed to him for the duration of his employment.

Girardi failed to satisfactorily perform his employment duties, or otherwise materially violated known rules of employment, for the period of time for which he seeks wage compensation.

Girardi filed an administrative wage claim in both Texas and New York, and pursued them to final adjudication.

AAM did not make an enforceable promise to pay Girardi an annual bonus.

The alleged promise to pay an annual bonus was allegedly made in December 2002, for a bonus to be paid on a calendar-year basis.

No bonus was ever earned by Girardi, according to the conditions of the alleged bonus.

The work for which Girardi seeks a bonus was fully compensated by the wages paid to Girardi.

Girardi continued to work for AAM knowing that he was not being paid a "bonus".

Girardi's above-described conduct regarding "competition" and/or "kickbacks" is a material prior breach of Girardi's employment contract or common-law duties to AAM.

Girardi was fully reimbursed or paid for all reimbursable expenses he properly incurred and reported while in AAM's employ.


**Conclusions re Girardi's Claims**:

AAM is not liable to Girardi for any unpaid wages, for one or more of the following reasons:

> i.  AAM paid Girardi for all wages earned during his employment.
>
> ii. Girardi's entitlement to wages, if any, is legally or equitably barred or offset by Girardi's wrongful conduct and/or prior breach of duty.
>
> > *Burrow v. Arce, 997 S.W.2d 229, 237 (Tex. 1999)*
>
> iii. Girardi, by pursuing his administrative wage claim in both Texas and New York to final adjudication, is barred from pursuing the same or similar claim in this legal proceeding.
>
> > *Igal v. Brightstar Technology Group, Inc., 250 S.W.3d 78 (Tex. 2008); Hull v. Davis, 211 S.W.3d 461 (Tex.App. – Houston [14th Dist.] 2006, no writ).*

AAM is not liable to Girardi for any bonus, for one or more of the following reasons:

> i.  There was no valid and enforceable promise to pay a bonus.
>
> > "The elements of a valid contract are: (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5)

PLAINTIFF'S PROPOSED FINDINGS AND CONCLUSIONS  - page 6

execution and delivery of the contract with the intent that it be mutual and binding." *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 150 (Tex.App. -- Houston [1st Dist.] 2005, pet. denied)(rejecting employee's attempt to enforce employer's alleged promise to pay him a bonus).  The terms of an alleged oral agreement must be "clear, certain, and definite" on all material terms.  *Gannon v. Baker*, 830 S.W.2d 706, 709 (Tex.App. -- Houston [1st Dist.] 1992, writ denied)(sale of stock).   "A lack of definiteness in an agreement may concern the time of performance, the price to be paid, the work to be done, the service to be rendered or the property to be transferred." *Id.*   Whether all essential terms have been agreed to is a question of law.  *Nickerson v. E.I.L. Instruments, Inc.*, 874 S.W.2d 936, 939 (Tex.App. -- Houston [1st Dist.] 1994, writ denied).

    ii.  No bonus is owed for work fully compensated by wages.

> *Beverick v. Kock Power, Inc., 186 S.W.3d 145 (Tex.App. – Houston [1st Dist.] 2005, pet. denied).*

    iii. Girardi's entitlement to wages, if any, is legally or equitably barred or offset by Girardi's wrongful conduct and/or prior breach of duty.

    iv. Any entitlement to a bonus is limited to bonus earned and to be paid within one year from the date the bonus allegedly was promised (December 2002).

    v. Girardi, by pursuing his administrative wage claim in both Texas and New York to final adjudication, is barred from pursuing the same or similar claim in this legal proceeding.

AAM is not liable to Girardi for any expenses, for one or more of the following reasons:

    i.  AAM paid or reimbursed all expenses to which Girardi was entitled.

    ii. Girardi's entitlement to expenses, if any, is legally or equitably barred or offset by Girardi's wrongful conduct and/or prior breach of duty.

Girardi shall take nothing from AAM on any of his claims, and AAM shall recover its costs incurred.


                            Respectfully Submitted,


                          /s/  Martin R. Griffin

                          Martin R. Griffin
                           State Bar No. 08462800
                           Law Offices of Martin R. Griffin
                           2603 Oak Lawn Ave., Suite 250
                           Dallas, Texas  75219

214-739-2001 (phone)
972-293-5344 (fax)

***Attorney in Charge for Plaintiff***

## CERTIFICATE  OF  SERVICE

    The undersigned counsel for Plaintiff hereby certifies that a copy of this document was sent to Sharon Campbell, attorney for Defendants, via EMAIL on October 20, 2008.


/s/  Martin R. Griffin

PLAINTIFF'S PROPOSED FINDINGS AND CONCLUSIONS  - page 8