**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **ALWAYS AT MARKET, INC.,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | Civil Action No. 3:06-CV-2145-BH |
| § | |
| **RONALD GIRARDI and** § | |
| **CONTEMPO GROUP, INC.** § | |
| § | |
| **Defendant.** § | |

## MEMORANDUM OPINION AND ORDER

Pursuant to the District Court's *Order of Reassignment*, filed January 10, 2007, and the consent of the parties, this matter was transferred for the conduct of all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c). Before the Court is *Movant Ronald Girardi's Motion for Relief From Judgment Pursuant to Federal Rule of Civil Procedure 60(b)*, filed April 8, 2010 (doc. 81). Based on the relevant filings, evidence, and applicable law, Plaintiff's motion is **DENIED**.

### I. BACKGROUND

Plaintiff Always at Market, Inc. ("AAM") is a direct and secondary distributor of watches and other merchandise via the internet. AAM procures merchandise at discounted prices from vendors, typically in Asia, and then sells the merchandise directly to end-users over the internet or to internet auction sites. In 2003, AAM hired Defendant Ronald Girardi ("Girardi") as an upper-management level full-time employee for the specific purpose of developing AAM's watch business, including sourcing product from vendors. In April 2005, suspicious that Girardi was working against AAM's interest, AAM informed Girardi that he had been terminated. On October 18, 2006, AAM sued Girardi along with Contempo Group Inc. ("CGI") in state court for breach of contract,

breach of fiduciary duty, misappropriation of trade secrets, unfair competition, and tortious interference with contractual relations. Girardi and CGI removed the case to federal court.

After a bench trial, the Court found that Girardi had formed CGI with his business partner, Ed Goldberg ("Goldberg"), while still employed by AAM in the summer of 2004. The Court also found that CGI had engaged in the same watch business as AAM and had distributed watches by some of the same vendors that Girardi had brought to AAM. One such vendor was Asad Massoud ("Massoud") of Orient Way and TaBell, who sold watches to Girardi and CGI under the "Prague" brand, and sold virtually identical watches to AAM under the "Bolle" brand. In late 2004 and early 2005, Girardi and CGI had entered into a venture with an Ohio company (Hour Power) for the manufacture and distribution of watches, and Girardi had solicited Ron Wollman ("Wollman") to assist in this venture. The Court found that John House ("House"), president of AAM, became aware of CGI, and its arrangements with some of its vendors and internet partners, after Girardi was terminated.

The Court concluded that Girardi was liable for breach of contract, breach of fiduciary duty, and tortious interference with contract for taking kickbacks from Massoud. It found that Girardi engaged in unlawful competition and misappropriated trade secrets, but that AAM did not prove damages on those counts. It also found that AAM had proved $230,560 in damages from the kickback scheme.

On the issue of whether Girardi had received kickbacks from Massoud, AAM called House to testify that he received an invoice in the form of an Excel spreadsheet from Massoud's office with a hidden column titled "C: per price." (*See* doc. 62, pageID 364-65). House testified that the total price reflected the amounts listed in the hidden column, and that he and others at AAM had surmised

2

that the column reflected kickbacks. (*Id.* at 365-66). Exhibit 17, which was entered into evidence, included a document showing that AAM had received the spreadsheet as well as the spreadsheet itself with the hidden column revealed. (*Id.* at 364-65). Girardi's attorney did not cross-examine House regarding this testimony and did not object to the entry of Exhibit 17 into evidence at trial.

AAM also called Wollman to testify on the issue of kickbacks, among other things. (*Id.* at 430-31). Wollman testified that Girardi had told him that Massoud made a "remuneration per-unit," and that "Massoud was taking care of a commission with him, and there was talk of additional monies being added to the purchase price" of "anywhere between two, three, as much as ten dollars a unit." (*Id.* at 430-31). Girardi's attorney did not cross-examine Wollman regarding this testimony.

AAM also presented Exhibit 22 into evidence, which contained Massoud's deposition on various issues. Deposition answer number 5 on the kickback issue stated that Massoud had a commission agreement with Goldberg, who introduced him to Girardi, and approached him in 2003 to add a two to ten dollar fee to each watch. The answer further stated that the increase in commission and fee was to be added to the price of the watch that AAM was paying and would be shared with Girardi to help start CGI, while he was still employed by AAM. (*See* Mot. App., doc. 82-2, pageID 845). Deposition answer number 7 stated that the extra commission and kick-back increased all of Orient Way prices to AAM between 2 and $10 in 2003." (*Id.* at 846). Deposition answer number 9, on the issue of unfair competition, stated that Girardi created CGI, started working with Massoud to produce product for CGI, and "had dealings with F. Ross on orders with Overstock.com," all while still employed by AAM. (*Id.*)

Since Massoud was a foreign resident and beyond the subpoena power of the Court, his deposition was taken pursuant to a stipulation between the parties while he was on a business trip

3

to the United States. (*See* Resp. App., doc. 87, pageID 907). The parties agreed to "a voluntary deposition via written questions to be submitted to Mr. Massoud through a court reporter authorized to take depositions wherever Mr. Massoud [could] be found." (*Id.*) The agreement required AAM "to contact and retain a court reporter . . . for the purpose of submitting the written questions to Mr. Massoud and transcribing whatever responses he [gave] to those questions . . ." (*Id.* at 908). Massoud could respond to the court reporter verbally or in writing, who would then prepare a written transcript of his testimony, certify it, and return it to AAM for filing with the Court. (*Id.*)

Girardi now moves the Court to vacate its judgment pursuant to Rule 60(b)(3) and (6) of the Federal Rules of Civil Procedure (Mot. Br. at 1) in light of a telephone conversation that he had with Massoud after the Court's entry of judgment in this case. According to Girardi, Massoud claims that his transcribed answers do not reflect his actual oral answers. (Mot. Br. at 9). Massoud denies ever stating that Girardi received kickbacks. (*Id.* at 9-10). He also denies that the "C: per price" column on the spread sheet in Exhibit 17 reflects kickbacks to Girardi. (*Id.* at 11). Massoud denies making the deposition response on the issue of unfair competition. (*Id.* at 11-12). Massoud states that, without being administered an oath on the Bible, he verbally provided his answers to a woman who recorded them without any transcription equipment or voice recording, and that he was not provided with a copy of the notes or what he ultimately signed. (*Id.* at 13-16). Finally, Massoud states that he agreed to be deposed to settle his problems with AAM, the problem being that AAM "wouldn't take the watches." (*Id.* at 13). Girardi contends that based on Massoud's recorded phone conversation, his deposition responses 5, 7, and 9 were fabricated, his purported deposition did not comply with the parties' stipulations, and AAM subjected Massoud to commercial blackmail in order to get his deposition. (*Id.* at 10-12).

4

Girardi's evidence regarding this contention consists of excerpts from the recorded phone conversation that he claims he had with Massoud after entry of judgment. Girardi provides transcripts of the conversation, along with his own sworn affidavit stating that the voice in the recordings is Massoud's, and that nothing omitted from the transcripts contradicts any statements included in the transcribed excerpts. (Mot. App., doc. 82, PageID 796-830). He also provides a sworn affidavit by a witness to the telephone conversation verifying that the transcripts are true and correct. (Mot. App., doc. 82-2, PageID 831-32).

Girardi also asserts that, after entry of judgment, Isidor Farish ("Farish"), who was familiar with Wollman and Girardi, and the entire controversy, confronted Wollman at an annual trade exhibition. (Mot. Br. at 17). Girardi claims that when Farish asked Wollman how he could lie about his friend Girardi, he responded that he did it to recover some unrelated financial losses that Girardi had caused. (*Id.* at 17-18). Girardi attaches Isidor Farish's sworn affidavit on this subject as evidence. (Mot. App., doc. 82, PageID 863-65).

Girardi also provides e-mails from the court reporter who signed Massoud's deposition to show that AAM did not follow the agreed procedures when deposing Massoud. (Mot. App., doc. 82-2, PageID 848-53).

AAM has timely responded to Girardi's arguments, and Girardi has filed a reply. The motion is now ripe for determination.

## II. EVIDENTIARY CONSIDERATIONS

AAM objects to the use of the transcript of the recorded telephone conversations between Girardi and Massoud on a number of grounds, including hearsay, lack of authentication and reliability, leading questions, and incomprehensible, inconsistent, confusing and/or ambiguous answers.

5

(Resp. Br. at 8).

The statements allegedly made by Massoud in the telephone conversation constitute inadmissible hearsay because they are out of court statements offered to prove the truth of the matter asserted. *See* Fed. R. Evid. 801 and 802. Massoud's unsworn assertions in his telephone conversation are offered for their truth, even if the overall purpose of the statements is to show that AAM's evidence presented at trial was false or fabricated. Additionally, Girardi does not argue that the hearsay exceptions listed in Fed. R. Evid. 803 and 804 apply in this case, even though it is his burden to show that one of the hearsay exclusions or exceptions apply. *See Sowders v. United Corp.*, SA-05-CA-309-OG, 2007 WL 3171797, at *1 (W.D. Tex. Aug. 15, 2007) (once a party properly makes a hearsay objection, the burden shifts to the proponent of evidence to show by a preponderance of evidence that the evidence fell within an exclusion or exception to the hearsay rule). AAM's hearsay objection is **SUSTAINED**.

### III. RULE 60(b)(3) MOTION

Girardi first seeks relief from judgment under Fed. R. Civ. P. 60(b)(3) arguing that AAM commercially intimidated witness Massoud, and altered his true answers to deposition questions. (Mot. Br. at 1; Reply at 10).

Rule 60(b)(3) allows the courts to relieve a party from a final judgment if the adverse party committed fraud, misrepresentation, or other misconduct. "A party making a Rule 60(b)(3) motion must establish (1) that the adverse party engaged in fraud or other misconduct, and (2) that this misconduct prevented the moving party from fully and fairly presenting his case." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 641 (5th Cir. 2005). The movant has the burden to show "the misconduct by clear and convincing evidence." *Id.* "Determining whether a party has made a

6

sufficient showing to warrant relief lies in the sound discretion of the district court." *Universal Sys. Inc. v. Lee*, 379 F.3d 131, 157 (5th Cir. 2004).

Because the phone transcript is inadmissible hearsay, Girardi cannot rely on that evidence to establish that AAM engaged in fraud, misrepresentation, or other misconduct. Even if the Court were to consider it, the transcript does not constitute clear and convincing evidence on the issues of fraud, misrepresentation, or other misconduct for at least two reasons. First, Girardi himself testified at trial that Massoud admitted to him that he lied under oath in his deposition testimony. (*See* doc. 63, PageID 593). This puts into serious doubt not only the credibility of Massoud's statements on the phone, but also their purported gist that his deposition testimony was a result of AAM's misconduct.[1] Second, Massoud's statements on the phone are unsworn, and are no more probative than the statements in his deposition testimony which Girardi now claims are unsworn.

Farish's sworn affidavit that Wollman admitted to lying at trial is also not clear and convincing for two reasons; Wollman denies such an admission in a sworn affidavit, and he points to Farish's business relationship with CGI and Girardi, therefore raising doubt as to whether Farish is a disinterested third party. (*See* Resp. App., doc. 87, PageID 947-48). The remaining evidence, i.e., e-mails from the court reporter who signed the deposition, raises some doubt as to whether proper procedures were followed when Massoud's deposition was taken, but does not clearly and convincingly establish that AAM engaged in wrongdoing such as altering Massoud's answers.

Even if the evidence was fabricated or resulted from fraud, misrepresentation or other misconduct, Girardi cannot show that he was prevented from fully and fairly presenting his case.

---

[1] Girardi cannot testify at trial that Massoud admitted to lying in his deposition under oath, and then argue that Massoud did not take the oath and that AAM fabricated his deposition answers.

7

As to Massoud's deposition testimony, Girardi made the same argument at trial that he does now – that Massoud's testimony is not credible. *See Hesling*, 396 F.3d at 639-40 (judgment will not be reopened if evidence is merely cumulative or impeaching and would not have changed the result). Despite his long-term relationship with Massoud, and his knowledge of Massoud's deposition testimony, which he claimed at trial was perjured,[2] Girardi did not pursue Massoud's testimony, nor seek a continuance to obtain what he calls "correct" testimony. Nor did he obtain rebuttal testimony from any other source, most importantly Goldberg, who was his partner in CGI and who had been identified as a participant in the kickback scheme in Massoud's deposition. Girardi's failure to fully present his case was certainly not for a lack of opportunity. *See Waddell v. Hendry County Sheriff's Office*, 329 F.3d 1300, 1310 (11th Cir. 2003) (where plaintiffs were aware of allegedly false testimony but chose not to rebut it or seek a continuance, their tactical decisions, and not fraud by defendants, prevented them from fully presenting their case at trial).

Additionally, Massoud's deposition testimony, and Wollman's trial testimony were not the only evidence presented at trial. On the kickback issue, AAM presented House's testimony that he had received a spreadsheet from Massoud with a hidden column titled "C: per price" with the $10 amount reflected in the total price.[3] On the issue of unfair competition, AAM presented Girardi's own e-mails and business plans (Tr. Ex. 15), and CGI's certificate of incorporation (Trial Ex. 11) showing when CGI was formed and began competing with AAM. On claims of trade secret misap-

---

[2] Even though Girardi claimed at trial that Massoud knowingly perjured in his deposition testimony for business reasons, he did not ask the Court to strike the evidence.

[3] Girardi now claims, based on the alleged telephone conversation with Massoud, that there is no correlation between the hidden column and a kickback scheme. Massoud's statement, however, it is not enough to discredit the spreadsheet as evidence, especially since Massoud is not testifying under oath and is not available for cross-examination. Additionally, Girardi does not explain the meaning of the hidden column.

8

propriation, tortious interference, breach of contract, and breach of fiduciary duty, AAM offered, and the Court relied on House's testimony in addition to other evidence. Girardi had the opportunity to object to this evidence, but he asserted no objection. Girardi has not shown that he would have proceeded differently even if he had known of AAM's alleged misconduct.

Girardi has not shown by clear and convincing evidence that AAM engaged in fraud, misrepresentation, or other misconduct, or that the alleged misconduct deprived him of the opportunity to fully and fairly present his case. Girardi's Rule 60(b)(3) motion is **DENIED**.

## IV.  RULE 60(b)(6) MOTION

Girardi also seeks relief from the final judgment under Rule 60(b)(6). (Mot. Br. at 1). As stated earlier, Rule 60(b)(3) provides relief from a final judgment where the adverse party obtained judgment through fraud, misrepresentation or other misconduct. Rule 60(b)(6) is a catch-all provision and provides relief "for any other reason." *Anthony v. Canal Indem. Co.*, 347 F. App'x 110, 112 (5th Cir. 2009). Relief under Rule 60(b)(6) is meant to encompass circumstances not covered by Rule 60(b)'s other enumerated provisions, and may be granted only if the court is presented with "extraordinary circumstances." *See Hess v. Cockrell*, 281 F.3d 212, 216 (5th Cir. 2002). Relief under Rule 60(b)(6) is not available when allegations of fraud or misconduct supporting it are essentially the identical grounds for relief sought under Rule 60(b)(3). *Hesling*, 396 F.3d at 643.

In his opening brief, Girardi does not distinguish the grounds of relief for his Rule 60(b)(3) and 60(b)(6) motions. Apart from his allegations that AAM made misrepresentations at trial and falsified evidence, Girardi fails to provide "any other reason" as grounds for relief for his Rule 60(b)(6) motion. Because the same allegations of fraud or misconduct support both motions, relief

9

is not available under Rule 60(b)(6).[4]  Girardi's Rule 60(b)(6) motion is therefore **DENIED**.

## V.  CONCLUSION

*Movant Ronald Girardi's Motion for Relief From Judgment Pursuant to Federal Rule of Civil Procedure 60(b)* (doc. 81) is **DENIED**.

**SO ORDERED** on this 7th day of June, 2010.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[4] In his reply brief, Girardi for the first time argues that the court reporter's negligence in not complying with the agreed deposition procedures is the additional reason for his Rule 60(b)(6) motion. (Reply at 10-11). Because Girardi has deprived AAM of a meaningful opportunity to respond to the argument, it is not considered. *See Spring Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991) (noting practice of declining to consider arguments raised for the first time in a reply brief because nonmovant should be given a fair opportunity to respond to the motion). In any case, Girardi has not presented evidence of extraordinary circumstances to warrant relief under the catch-all provision.